IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 17, 2006 Session

# RYDER INTEGRATED LOGISTICS, INC. v. EDWIN JASON ALDRICH, ET AL.

### Appeal from the Chancery Court for Montgomery County
### No. MC-CH-CV-D-T-04-12    Thomas E. Gray, Chancellor

### No. M2006-00115-COA-R3-CV - Filed on March 30, 2007

Trial court dismissed action by worker's compensation lienholder against employee's attorney seeking to hold employee's Tennessee attorney liable for disbursement of proceeds from third party settlement made by another out-of-state attorney. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN, and FRANK G. CLEMENT, JR., JJ., joined.

Robert H. Lewis, Nashville, Tennessee, for the appellant, Ryder Integrated Logistics, Inc.; David J. Deming, David M. Drobny, Nashville, Tennessee, Brief of Amicus Curiae, in support of the appellant, Ryder Integrated Logistics, Inc.

Thomas C. Corts, Nashville, Tennessee, for the appellees, Mart Grayson Fendley and Rudolph, Ross Fendley & Hogan, a Tennessee Partnership.

## OPINION

A workers compensation employer lienholder, Ryder Integrated Logistics, Inc. ("Ryder"), who settled an employee's workers compensation claim, brought suit against the employee and the employee's attorney seeking to recover under its subrogation lien under Tenn. Code Ann. § 50-6-112 *et seq*. The employee had settled with Georgia tortfeasors in Georgia on the employee's third party claim, and Ryder is seeking to assert its subrogation rights to that settlement. This appeal concerns solely whether the lienholder can recover from the employee's Tennessee attorney under one of a number of theories, including breach of contract, impairment of lien, and breach of fiduciary duty. Whether and to what extent Ryder can enforce its lien against the employee who received a settlement from the Georgia tortfeasors is not at issue in this appeal.

## I. BACKGROUND

The following facts have been agreed to by the parties and are not at issue. While Edwin Aldrich was acting within the scope of his employment with Ryder, he had an automobile accident in Georgia that caused him personal injuries. Represented by Mr. Mart Fendley, Mr. Aldrich sued Ryder in the Montgomery County Chancery Court for workers compensation benefits. Mr. Fendley is an attorney with Rudolph, Ross, Fendley and Hogan in Clarksville, Tennessee. Mr. Aldrich and Ryder were able to reach an agreement to settle his workers compensation case. Ryder paid a total of $181,050.75 to settle Mr. Aldrich's workers compensation claim, which included a payment to Mr. Aldrich of $120,000, plus his medical expenses and case management costs. The parties make no mention of any agreement between Mr. Aldrich or Ryder regarding assignment of any claim Mr. Aldrich may have against third parties. This settlement was approved by the Montgomery County Chancery Court on June 1, 2001.

Under Tennessee law, if Mr. Aldrich received workers compensation benefits, he was nevertheless entitled to bring suit against the persons or entities that caused his injuries. Tenn. Code Ann. § 50-6-112(a). The employer who paid the workers compensation benefits is given a statutory "subrogation lien" on any recovery by the employee, and the employer "may intervene in any action to protect and enforce such lien." Tenn. Code Ann. § 50-6-112(c)(1).

While the workers compensation matter was proceeding, Mr. Aldrich also filed suit in Georgia against four alleged tortfeasors whom Mr. Aldrich claimed were responsible for his injuries.[1] Although Mr. Aldrich was still represented by Mr. Fendley, since the lawsuit against the alleged tortfeasors was to be brought in Georgia, Mr. Fendley associated a Georgia attorney, James Carr, Jr., to represent Mr. Aldrich in Georgia.

After Mr. Aldrich and Ryder settled the workers compensation claim, Mr. Fendley discussed Ryder's subrogation claim totaling $181,050.75 with Ryder's attorney, Mr. Robert Lewis. Mr. Fendley told Mr. Lewis that it was not necessary for Ryder to intervene in the Georgia suit to assert its subrogation claim. In a letter to Ryder, Mr. Fendley acknowledged Ryder's "subrogation claim" and stated "when something occurs that would require such an intervention, I will advise you of the same well in advance." This arrangement was communicated to Mr. Aldrich's Georgia attorney by Ryder through a letter from Ryder's counsel.

A mediation was held on Mr. Aldrich's Georgia suit against the four alleged tortfeasors in March of 2003. Mr. Fendley notified Ryder's counsel of the mediation and, as a consequence, Mr. Lewis appeared on behalf of Ryder at the mediation. During Mr. Fendley's presentation of his client's claim against the four individuals who allegedly caused the accident, he stated that any settlement must be sufficient to compensate Mr. Aldrich and also satisfy Ryder's subrogation claim. Counsel representing the alleged four tortfeasors rejected this assertion that any settlement must

---

[1]The record does not disclose exactly when Mr. Aldrich filed the Georgia lawsuit.

include sums sufficient to satisfy Ryder. It was explained to all present, including Mr. Fendley and Ryder's counsel, Mr. Lewis, that Georgia did not recognize out-of-state subrogation liens.

The March 2003 mediation was not successful, and Mr. Aldrich did not settle his Georgia suit at that time. After the mediation, it is undisputed that Mr. Fendley advised Mr. Lewis on several occasions that Mr. Lewis should research Georgia law to determine whether Georgia law would allow and recognize Ryder's subrogation claim. Significantly, Mr. Fendley also informed Mr. Lewis that Mr. Aldrich would probably refuse to allocate any proceeds from the Georgia lawsuit to satisfy Ryder's subrogation claim based what they had been told about Georgia law.

Later, in September of 2003, the Georgia defendants made a settlement offer to Mr. Aldrich. The settlement offer made no provision for paying Ryder's subrogation claim. After some difficulty, Mr. Fendley got his client to agree that Ryder should be notified of the settlement offer before it was approved and paid. On September 8, 2003, Mr. Fendley informed Mr. Lewis of the proposed yet unconsummated settlement, and Mr. Fendley yet again asked Mr. Lewis to intervene on behalf of Ryder in the Georgia suit before the settlement was approved. No intervention was filed in the Georgia case. The hearing in Georgia to approve the settlement was set for September 29, 2003.

Apparently rather than intervene in the Georgia case, Ryder took action in the Tennessee courts. Ryder filed a Notice of Lien, Motion to Enforce Lien, and Motion for Injunctive Relief on September 16, 2003. Counsel for Ryder informed the Tennessee court of the Georgia proceedings. The Tennessee court issued a restraining order on September 18, 2003, enjoining Mr. Aldrich or his counsel from disbursing any settlement funds.[2] Thereafter, on September 24, 2003, the Tennessee court then found that a statutory lien under Tenn. Code Ann. § 50-6-112 existed in favor of Ryder. In that order, while the trial court found a lien existed, the Tennessee court found "The settlement of the tort suit occurred or is occurring in Georgia. The money is or will be in Georgia. This Court does not have jurisdiction over Georgia money or the Georgia attorneys."

After obtaining their two orders in Tennessee, Ryder then hired counsel in Georgia who filed a Notice of Entry of Limited Appearance and a Notice of Ryder's lien in the Georgia court on September 26, 2003. The Georgia court was informed of the Tennessee court's orders. Counsel for Ryder was present at the September 29, 2003, conference where the Georgia court was asked to approve the Georgia settlement. At the settlement conference, Ryder's counsel told the Georgia court "we're not here to intervene in the Georgia lawsuit, we're not here to do anything with respect to the Georgia lawsuit other than to make sure that the Court approves this settlement."

The Georgia court found that since Ryder had not intervened in the Georgia case, then the Georgia court could not determine the rights of the parties or Ryder on the subrogation issue. Consequently, the Georgia court approved the settlement on September 29, 2003.

---

[2]When the trial court issued this restraining order, the trial court noted that Tenn. Code Ann. § 50-6-112 allows the lienholder to intervene to protect its lien and that Georgia "will not allow [Ryder] to intervene."

The Georgia settlement proceeds totaling $110,000 were paid into the trust account of Mr. Carr, the Georgia lawyer hired by Mr. Aldrich. Mr. Aldrich "demanded" that the proceeds be disbursed in accordance with Georgia law. Pursuant to his client's instructions, Mr. Carr distributed $67,000 to Mr. Aldrich. Ryder received nothing on its subrogation claim. Mr. Carr received $22,500 in fees and costs. Mr. Fendley's attorneys' fees, totaling $20,500, are still being held in Mr. Carr's trust account.

Thereafter, in October of 2004 Ryder filed this suit against Mr. Aldrich,[3] Mr. Fendley, and his firm seeking to recover the amount it claims is due under its subrogation rights under several theories. With regard to Mr. Fendley, Ryder first alleges Mr. Fendley and his firm "violated their fiduciary duty to protect and satisfy [Ryder's] subrogation interests as agreed upon and required by the laws of the State of Tennessee." Second, Ryder alleges that defendant is liable under breach of contract and "misapplication of third party settlement funds in violation of its statutory lien and this Court's Restraining Order constitutes conversion."

Mr. Fendley and his firm filed a motion for summary judgment seeking their dismissal. The trial court granted Mr. Fendley and his firm summary judgment, finding that Mr. Fendley acted appropriately. The trial court made its order a final judgment under Rule 54 of the Tennessee Rules of Civil Procedure. Ryder then appealed. It is important to note that this appeal involves only the liability of Mr. Fendley and his firm and has no bearing on Mr. Aldrich's liability. Mr. Aldrich did not answer the complaint. The record shows Ryder intended to proceed against Mr. Aldrich to obtain a default judgment.

Ryder presents two issues on appeal. First, Ryder poses the question whether the employers' workers compensation lien of Tenn. Code Ann. § 50-6-112 applies to out-of-state recoveries by an employee. Ryder's second issue on appeal is whether Mr. Fendley as the employee's counsel has a duty to protect the workers compensation employer's lien.

## II. ANALYSIS

Although Ryder may pose the question as whether the lien of Tenn. Code Ann. § 50-6-112 applies to out-of-state recoveries by an employee, we do not find answering that question necessary to resolving this appeal. If we assume, purely for the sake of argument, that such a lien does apply, under the undisputed facts in this case Ryder is still not entitled to recover from Mr. Fendley or his firm.

Ryder's allegations against Mr. Fendley and his firm are that they violated a "fiduciary duty to protect and satisfy [Ryder's] subrogation interests," breach of contract, misappropriation of funds in violation of the lien and the restraining order, and impairment of lien. The action against Mr.

---

[3]With regard to Mr. Aldrich, Ryder alleges pursuant to Tenn. Code Ann. § 50-6-112 that Ryder is entitled to be subrogated to any recovery by Mr. Aldrich. The matter against Mr. Aldrich, however, is not the subject of this appeal.

Fendley is not to enforce the lien. Instead, it is an action against Mr. Fendley sounding in contract and tort and alleging that due to Mr. Fendley's actions he is independently liable to Ryder.

Our Supreme Court has held that under Tenn. Code Ann. § 50-6-112, the employee's attorney is "obligated to protect the employer's interest," *i.e.*, the subrogation lien. *Summers v. Command Systems, Inc.*, 867 S.W.2d 312, 315 (Tenn. 1993). The undisputed record shows, however, that Mr. Fendley satisfied any duty or agreement he may have had with Ryder. Mr. Fendley kept Ryder apprised of the progress of the Georgia proceedings, urged Ryder to intervene in the Georgia case, asked Ryder to find Georgia law supporting the Tennessee lien under Georgia law, and notified Ryder of the pending settlement in spite of his client's concerns. The primary responsibility to protect and assert the lien was Ryder's. Tenn. Code Ann. § 50-6-112(c)(1). "[B]oth the employer and the employee have the right to recover against a third party tortfeasor [and] each has the right to be represented by its own counsel. . . ."*Summers v. Command System, Inc.*, 867 S.W.2d at 315. Mr. Fendley did nothing to deter Ryder and, as things developed, did not represent to Ryder that he would or could get any of the settlement money for it.

Further, although Mr. Fendley was obligated to protect Ryder's interest, that obligation must be limited to what was reasonably possible. Whether or not Georgia courts would recognize a Tennessee subrogation lien is not before this court. If Georgia courts would not enforce such a lien, Mr. Fendley was in no better position to seek enforcement than was Ryder. In the situation before us, Mr. Fendley did not have a greater responsibility to Ryder than its own attorneys had. If Ryder had no protectable or enforceable interest in the Georgia proceedings, there is no basis for arguing that Mr. Fendley could accomplish what Ryder's attorneys could not.

Ryder's attorney specifically declined to seek intervention when asked at the settlement hearing. Whether that decision was prompted by Georgia law or by something else, Mr. Fendley did not represent Ryder and discharged any responsibility he may have had or felt toward Ryder. Neither the Georgia court nor the Tennessee court took any action to impose or enforce Ryder's lien on the funds awarded to Mr. Aldrich as part of the Georgia settlement. It is simply not clear to us what Mr. Fendley could have done to force the courts or his client to give Ryder money from the client's Georgia settlement.

In effect, Ryder is attempting to place responsibility on Mr. Fendley to accomplish what Ryder did not or could not do and what the Georgia court did not order and the Tennessee court acknowledged it had no authority to order. There is no evidence whatsoever that Mr. Fendley or his firm in any way violated any duty or agreement with Ryder.

With regard to misapplication of funds, the record does not support Ryder's allegations. The record is perfectly clear that Mr. Fendley and his firm had no funds whatsoever in their possession that could be misapplied. The funds were in the possession of Mr. Aldrich's Georgia counsel, who disbursed them. Mr. Fendley and his firm had no control over the money paid in Georgia to Mr. Aldrich and his Georgia counsel. He had no power to compel his client or the Georgia lawyer to reimburse Ryder.

We find Ryder failed to allege any ground that supports recovery against Mr. Fendley or his firm.  Since Ryder's claim against Mr. Aldrich was not yet ruled on by the trial court and is not involved in this appeal, that matter remains undecided.

We note that Mr. Carr in Georgia is still holding Mr. Fendley's fee in his Georgia trust account.  Even if we assume that the lien of Tenn. Code Ann. § 50-6-112 applies, we note that the statute grants a "first lien" to the employee's attorney for attorneys' fees incurred in a third party recovery.  We find no basis in this lawsuit for Ryder to make any claims to these funds based upon any liability or wrongdoing by Mr. Fendley or his firm.  The question of whether and to what extent Mr. Aldrich's attorney's fees are reasonable has not be raised.  Ryder's complaint makes no allegations regarding Mr. Fendley's fee currently held by Mr. Carr in Georgia.

Furthermore, in the event Ryder is successful against Mr. Aldrich and recovers from Mr. Aldrich on Ryder's subrogation claim, any dispute between Ryder and Mr. Aldrich about the amount and apportionment of the attorney's fees between them can and should be resolved by the trial court. *See Summers v. Command Systems, Inc.*, 867 S.W.2d at 316; *Memphis Light, Gas and Water Division v. Ellis*, No. 02A01-9307-CV-00167, 1994 WL 400768 (Tenn. Ct. App. Aug. 4, 1994) (No Tenn. R. App. P. 11 application filed).  The apportionment issue has not been raised in this appeal.

The trial court is affirmed.  Costs of this appeal are taxed against Ryder Integrated Logistics, Inc. for which execution my issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE